# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLENN MCCLOUD, | : | CIVIL NO. 3:14-CV-1663 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| WARDEN J.E. THOMAS, | : | |
| Respondent | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 filed by petitioner, Glenn McCloud ("petitioner"), a federal inmate, formerly incarcerated at the United States Penitentiary at Lewisburg (USP-Lewisburg), Pennsylvania. He alleges that his due process rights were violated during disciplinary proceedings associated with Incident Reports 2547202, 2547204, and 2549737. The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I. Background

The Federal Bureau of Prisons ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011). These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is referred to the Unit Disciplinary Committee

("UDC") for a hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. Id. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. Id. Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. 28 C.F.R. § 541.3.

On February 10, 2014, while incarcerated at USP-Lewisburg, McCloud was notified that, based on conduct in which he engaged on January 8, 2014, he was being charged in three separate incident reports, 2547202, 2547204, and 2549737, with Prohibited Act Code 196, Use of the Mail for an Illegal Purpose, and Prohibited Code Act 314, Forgery.

The first report, 2547202, sets forth the following incident:

> While reviewing a Habeas petition filed by inmate McCloud with the U.S. District Court for the Middle District of PA, I noticed an attachment provided by the inmate which was supposedly from DHO who heard the case the inmate was challenging (IR 1459462). I contacted the DHO, Scott Schleder, at FCI Jessup [sic]. DHO Schleder confirmed that the handwriting and signature on the attachment was not his, and provided a memo to that effect. Inmate McCloud was filing the above reference materials with the court in an effort to have the Good Conduct Time to which he was sanctioned to lose in this DHO matter restored, and thus, reduce his sentence.

(Doc. 8-1, p. 38).

The incident in report 2547204, is described as follows:

> While reviewing a Habeas petition filed by inmate McCloud with the U.S. District Court for the Middle District of PA, I noticed an attachment provided by the inmate which was supposedly from FCI Jesup DHO Scott Schleder. I contacted Mr. Schleder who confirmed that the handwriting and signature was not his.

2

> Inmate McCloud was filing these materials with the court in an effort to challenge his DHO hearing for IR 2397950, and have Good Conduct Time he lost reinstated. This would shorten the time he had left to serve on his sentence and change his release date.

(Id. at p. 70).

The third incident report, 2549737, concerns the following conduct:

> While reviewing a Habeas petition filed by inmate McCloud with the U.S. District Court for the Middle District of PA, I noticed an attachment provided by the inmate which was supposedly from USP Atlanta DHO Duane Donovan. I contacted Mr. Donovan who confirmed that the handwriting and signature was not his. Inmate McCloud was filing these materials with the court in an effort to challenge his DHO rehearing for IR 2397950, and have Good Conduct Time he lost reinstated. This would shorten the time he had left to serve on his sentence and change his release date. I received confirmation from DHO Donovan that this was not his signature on 2/17/2014.

(Doc. 8-2, p. 32).

During the investigation, McCloud received advanced written notice of the charges and was advised of his right to remain silent. (Doc. 8-1, p. 39; Doc. 8-2, pp. 1, 33). He made no comment during the UDC reviews; the UDC referred the matters to the DHO "due to reporting requirements" and recommended that the DHO apply all appropriate sanctions. (Id. at 38, 70; Id. at 32). Although McCloud refused to sign the Inmate Rights at Disciplinary Hearing forms and DHO Hearing Notices, he indicated that he wished to have a staff representative, Mr. Tharp, present at the hearings, and have Inmate Adams appear as a witness. (Id. at 42, 43; Id. at 3, 5, 35, 36).

The hearings commenced on March 12, 2014. (Id. at 47; Id. at 9, 41). Petitioner's staff representative, Mr. Tharp, testified that "McCloud's contention is that he never read the petition before he signed it and once he (McCloud) became aware the petition contained

forged supporting documentation, he filed to have the petition withdrawn." (Id.) McCloud testified that he did not fill out the 28 U.S.C. § 2241 habeas corpus forms; another inmate, who he was unwilling to identify, completed the forms for him. (Doc. 8-1, pp. 47, 48; Doc. 8-2, pp. 9, 10; 41, 42). As evidence, he submitted a handwritten note from the inmate, with the inmate's name blacked out. (Id.) In the note, the inmate instructed McCloud to sign five separate 28 U.S.C. § 2241 petitions and file them with the court. (Id.) McCloud testified that he did not read any of the petitions or attachments before signing the petitions and filing them. "If I had read everything I would have seen it. I didn't read any of the documents. I just signed them. Once I found out there were forged documents attached, I wrote to the Court and asked to withdraw all the habeas petitions." (Id. at 48; Id. at 10, 42). Inmate Adams testified that "I was present when McCloud signed all the petitions. I can verify that he didn't read them prior to signing them. He just signed them." (Id.)

Based on the evidence, the DHO found that petitioner committed the Prohibited Acts of Use of the Mail for an Illegal Purpose (Attempted) in violation of Code 196A, and Forgery (Aiding and Abetting), Code 314A. (Id. at 49; Id. at 11, 43).

In arriving at this conclusion, he stated the following with regard to Incident Report 2547202:

> This finding is based upon the eyewitness written account of the reporting officer, which indicates on 02-10-2014 at 12:00 pm, while reviewing a Habeas petition filed by Inmate McCloud [ ] with the U.S. District Court for the Middle District of PA, the reporting officer noticed an attachment provided by McCloud which was supposedly from DHO who heard the case the inmate was challenging. (IR 1459462). The reporting officer contacted the DHO, Scott Schleder at FCI Jesup. DHO Schleder confirmed that the handwriting and signature on the attachment was not his, and provided a memo to that effect. Inmate McCloud was filing the

>above reference materials with the court in an effort to have the Good Conduct Time to which he was sanctioned to lose in this DHO matter restored, and thus, reduce his sentence.

(Doc. 8-1, p. 49). The finding was also based on the "AO-242, Petition for Writ of Habeas Corpus Under §2241," that was filed in this Court and assigned Civil Action No. 14-cv-0078, the handwritten "Inmate Written Statement Request" attached to the petition as Exhibit 1, and the written statement of DHO Schleder stating "That is not my signature. That is not my printing." (Id. at 49, 50). The DHO also considered the evidence McCloud advanced in his defense including his testimony, during which he admitted that he is not disputing the accuracy of the facts contained in the incident report, the note from the unidentified inmate who allegedly authored the petition, the testimony of Inmate Adams; McCloud's written request to this Court seeking to withdraw Civil Action No. 14-cv-0078; and the February 26, 2014, Order of Court withdrawing the petition without prejudice. (Id. at 50).

>The evidence presented by McCloud was given less weight for the following reasons:
>
>First, McCloud readily admitted it is his signature beneath the statement on the last page of the AO-242 "I declare, certify, verify, and state under penalty of perjury that the foregoing is true and correct. Signed this 8th day of January 2014. McCloud testified "Yes, that's my signature. I signed the document." McCloud . . . must be held accountable, both for the statements contained in the AO-245, and any documentary evidence attached supporting the claims, in this case, a statement allegedly authored by McCloud, and responded to by the DHO at FCI Jesup in April 2006, which McCloud admitted through his testimony, is a complete forgery. McCloud's contention he did not read the documents prior to signing a statement declaring, certifying, verifying, and stating under perjury that the information contained in AO-245 is true and correct is simply not a valid defense to the charges in this case.
>
>Moreover, the fact McCloud submitted written requests to the court to "withdraw all petitions . . . after receiving the incident reports charging [him] with committing prohibited acts, and an Order dated 2-26-2014, issued by the United

> States District Court for the Middle District of Pennsylvania, dismissing the petition without prejudice based on McCloud's request to withdraw the instant petition for writ of habeas corpus in Civil No. 3:CV-14-0078, are not evidence giving greater weight to a conclusion McCloud was not aware of the contents of the AO-245, or to a determination McCloud committed no prohibited act in this case. Greater weight must be give to the fact McCloud signed a statement declaring, certifying, verifying, and stating under penalty of perjury, that the information contained in the AO-245 is true and correct, when he was aware, or clearly should have been aware, the information contained in Section 15. a. Ground One, Supporting Facts, was clearly not factual, and that this statement was supported by a document which was clearly a forgery, as McCloud admitted to during the course of his testimony presented at the hearing.

(Id. at 50, 51).

The finding of guilt with regard to the second Incident Report, 2547204, was based on the eyewitness written account of the reporting officer and the § 2241 petition filed in this Court challenging Incident Report 2397950, which contained the following statements in the Supporting Facts section: "petitioner received a hearing before the DHO regarding incident report 2397950. During the onset of the hearing the DHO did not consider all the evidence presented. The hearing officer failed to consider the inmate request to staff form that was provided and responded to by the hearing officer prior to the hearing. See Exhibit 1. The hearing officer agreed to call the officer for testimony, but failed to do so." (Doc. 8-2, p. 11). The finding was further based upon the "Inmate Request Written Statement" attached to the § 2241 petition which "is allegedly a request made by McCloud to the DHO at FCI Jesup, where the hearing was conducted to 'preserve and review video evidence' he further alleges would 'prove' he did not commit the prohibited act. The document further contains a 'response' allegedly written by the DHO at FCI Jesup, Mr. Schleder, which states 'I am fully aware of your situation and I will look at the video footage as you requested. Request

granted.'" (Id. at 12). The DHO also considered DHO Schleder's statement "that is not my signature. That is not my printing. If he had submitted this document it would have been 1) included in the record and 2) referenced as a written statement/request in Section III of the DHO report." (Id.)

The DHO considered McCloud's testimony, during which he admitted that he did not dispute the accuracy of the facts contained in the incident report. Other evidence taken into account included the note from the unidentified inmate who allegedly authored the § 2241 petition, the § 2241 petition filed with this Court at Civil Action No. 14-cv-0146, the testimony of Inmate Adams, McCloud's written request to this Court seeking to withdraw Civil Action No. 14-cv-0146, and the February 26, 2014, Order of Court withdrawing the petition without prejudice. (Id. at 12, 13). However, this evidence was given less weight for the same reasons set forth in the decision on the first Incident Report, 2547202. (Id.) The DHO concluded that "[t]he greater weight of the evidence" supported a finding of guilt. (Id.)

As to the third incident report, 2549737, in arriving at a finding of guilt, the DHO relied on the "handwritten 'Inmate Request to Staff' (identified as 'Exhibit - 1'), dated 2-27-2013, which was used to support claims made in the AO-242. This document is authored in the same handwriting as the AO-242. This document is allegedly a request made by McCloud to the DHO at USP-Atlanta, where the rehearing was conducted, to call three witnesses he further alleges would 'prove' he did not commit the prohibited act. This document further contains a 'response' allegedly written by the DHO at USP-Atlanta, Mr. Donovan, which states 'Your hearing will be held on 3-1-13 at about 9:00 based on the grant

of a rehearing by the region director. (At the time of the hearing, I will make every attempt to call the three witnesses you request.' The response is written in the same handwriting as the request, and purportedly bears the signature D. Donovan, and is dated 2-27-2013. This document was used to support claims made in the AO-242." (Doc. 8-2, p. 44). However, DHO Donovan submitted a written statement indicating that the document McCloud submitted is a forgery and does not contain his signature. (Id.) In all other respects, the DHO relied on the same evidence upon which he relied in considering the first two incident reports, set forth *supra*. (Id. at 44, 45). Again, he concluded that the greater weight of the evidence supported a finding that McCloud committed the prohibited acts. (Id. at 45).

In imposing sanctions of disallowance of good conduct time, forfeiture of non-vested good conduct time, loss of commissary, telephone and visiting privileges, and monetary fines, the DHO reasoned that:

> Inmates who use the mail to commit illegal acts hamper the ability of staff to maintain the security and good order of the institution and interferes with the statutory responsibility of the Bureau of Prisons to protect society. Moreover, counterfeiting documents and forging staff signatures on documents in a correctional institution is a serious threat to the security and good order of the institution, and inherently jeopardizes the same. In this case, these forged documents were used to support perjured filings in a United States District Court. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disallowed and Forfeited Non-vested Good Conduct Time are imposed to demonstrate that engaging in misconduct will prolong [his] period of incarceration. Forfeited Non-Vested Good Conduct Time is warranted, based on the serious nature of the incident . . . Loss of commissary, telephone, and visiting privileges are imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated. Loss of each of these privileges for a protracted period of time is warranted, again, based on the serious nature of the prohibited act committed. Finally, a monetary fine is imposed as a sanction, again, based on the serious nature of the prohibited act committed.

(Doc 8-1, pp. 51, 52; Doc. 8-2, pp. 12-14, 45, 46).

On appeal of Incident Report 2549737, it was determined that the violation of Code 196A was addressed in Incident Report 2547204. (Doc. 8-2, p. 64). As such, Code 196A and corresponding sanctions were expunged from Incident Report No. 2549737. However, the Code 314A offense was upheld "as the forged document in this case (Exhibit 1- Copout), [was] not the same forged document for the other two incident reports [he] received." (Id.)

After exhausting all available administrative remedies, McCloud filed the instant petition seeking relief on the following grounds: "8. Petitioner was denied due process by being served two (2) incident reports (#2547204 & 2549737) alleging the same violation; 9. Petitioner was denied due process by being neglected foreknowledge of exactly the elements he was accused of, thus barring the possibility of adequately defending himself; 10. Petitioner was subjected to cruel & unusual punishment by monetary fine being sanctioned grossly exceeding the limits there in BOP policy; 11. Movant was unjustly found guilty of incident report(s) for reports for offenses despite contradicting documentary evidence." (Doc. 1, p. 4).

**II.     Discussion**

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  Because federal inmates possess a liberty interest in good conduct time, see Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991), a sanction of loss of that time requires that the inmate receive the following due process protections: 1) written notice of the claimed violation at least twenty-four hours in advance of a hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; 3) aid in presenting a defense if the inmate is illiterate or the complexity of the case makes it unlikely that the inmate will be able to collect and present the necessary evidence for an adequate comprehension of the case; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action.  See Wolff, 418 U.S. at 564-72.

McCloud alleges that he was not informed of "exactly the elements he was accused of, thus barring the possibility of adequately defending himself." (Doc. 1, p. 4).  This is belied by the record which clearly establishes that he received written notice of the charges against him on February 10, 2014, well in advance of the March 12, 2014 hearings.  (Doc. 8-1, pp. 38-52; 70; Doc. 8-2, pp. 1-14, 32-46).

McCloud's allegation that incident reports 2547204 and 2549737 charge him with the same allegation is also without merit. (Doc. 1, p. 4).  In report 2547204, he was charged with

the filing of a federal petition for writ of habeas corpus with a forged attachment bearing the forged signature of DHO Schleder from FCI-Jesup.  Although report 2549737 concerns the same federal petition for writ of habeas corpus, it involves a separate forgery, specifically, an exhibit containing a forged statement affixed with the forged signature of DHO Donovan at USP-Atlanta.  (Doc. 8-1, p. 70; Doc. 8-2, p. 32).  Clearly, two different instances of prohibited conduct warrant the issuance of separate misconduct reports.  To the extent that there was any overlap in charges, this was remedied during the administrative appeal.  Specifically, the Code 196A and corresponding sanctions were expunged from Incident Report No. 2549737, when it was determined that the Code 196A in Incident Report 2549737, was addressed in Incident Report 2547204.  (Doc. 8-2, p. 64).

McCloud also claims that he "was unjustly found guilty of incident report(s) for offenses despite contradicting documentary evidence."  (Doc. 1, p. 4).  Where the due process requirements of Wolff are met, as is the case here, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445, 455 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings).  The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455.  Under Hill, judicial review of a prison disciplinary decision is limited to ensuring

that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457; see also 28 C.F.R. § 541.17(f) (requiring that the DHO's decision be based upon at least some facts and, if there was conflicting evidence, to be based on the greater weight of the evidence).

In each of the hearings, the DHO relied upon the following evidence: the eyewitness written account of the reporting officer, the petitions for writs of habeas corpus filed in this Court, assigned Civil Action Nos. 14-cv-0078 and 14-cv-0146, attachments to the petitions, and the written statements of DHO Schleder and DHO Donovan. The DHO also considered the evidence McCloud advanced in his defense including his testimony, during which he admitted that he did not dispute the accuracy of the facts contained in the incident reports, the note from the unidentified inmate who allegedly authored the petitions, the testimony of Inmate Adams, McCloud's written requests to this Court seeking to withdraw Civil Action Nos. 14-cv-0078 and 14-cv-0146, and the February 26, 2014 Orders of Court withdrawing the petitions without prejudice. (Id. at 50). In weighing all the evidence, the DHO concluded that the "greater weight of the evidence" supported a finding that McCloud committed the prohibited acts. The Court finds that evidence relied upon constituted "some evidence" that petitioner committed the prohibited acts. Consequently, the petition will be denied with respect to this claim.

Finally, McCloud challenges the monetary sanctions. BOP regulations authorize the DHO to impose monetary sanctions when an inmate violates Greatest Severity Level Prohibited Act Code 197 "Use of the mail for an illegal purpose or to commit or further a Greatest Severity prohibited act," and Moderate Severity level Prohibited Act Code 314

"Counterfeiting, forging, or unauthorized reproduction of any document . . . " 28 C.F.R. § 541.3, Tables 1, 2.  McCloud challenges the computation and execution of the monetary fines imposed upon him.  Specifically, he claims that he was "subjected to cruel and unusual punishment by monetary fine being sanctioned grossly exceeding the limits in there [sic] BOP policy."  Because such a claim does not lie "at the core of habeas" as it does not affect the execution of McCloud's criminal sentence, Preiser v. Rodriguez, 411 U.S. 475, (1973), it is not cognizable in a petition for writ of habeas corpus.

### III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied.  An appropriate Order follows.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated:  June 21, 2016